**In Re Anonymous No. 32 D.B. 83**

Disciplinary Board Docket No. 32 D.B. 83.

NEUMAN, *Member,* November 19, 1984—Pursuant to the Pennsylvania Rule of Disciplinary Enforcement 208(d), The Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above captioned petition for discipline.

## I. HISTORY OF THE PROCEEDINGS

Respondent, was born on November 9, 1948, and admitted to the practice of law in the Commonwealth of Pennsylvania on May 6, 1974. His office is located at [ ]. He was transferred to inactive status for failure to pay his annual attorney registration fee pursuant to Rule 219 of the Rules of Disciplinary Enforcement by order of the Supreme Court on March 16, 1983.

On June 13, 1983, the Office of Disciplinary Counsel filed a petition for discipline against respondent. Subsequent to the filing of the petition for discipline, respondent paid his fee and was transferred to active status.

The petition for discipline alleges that respondent commingled and converted funds sent by [A] Insur-

ance Company ([A]) to compensate the physician of respondent's client, [B]. The petition further alleges that respondent forged the signature of the physician, [C], on one of the three checks forwarded by [A] to the office of respondent.

Subsequent to the conclusion of the proceedings of the hearing committee, respondent was convicted of two counts of theft by failure to make required disposition in violation of 18 Pa.C.S. §3927. On May 14, 1984, he was sentenced by the Court of Common Pleas of [ ] of two concurrent three year terms of probation. He was found not guilty of forgery. Respondent was suspended by order of the Supreme Court on July 13, 1984.

In the petition for discipline, Office of Disciplinary Counsel charged respondent with the following violations of the Disciplinary Rules of the Code of Professional Responsibility:

1. D.R. 1-102(A) (4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

2. D.R. 1-102(A) (6), which prohibits an attorney from engaging in other conduct which adversely reflects on fitness to practice law; and

3. D.R. 9-102(A), which requires that all funds of clients paid to an attorney, except for advances for costs and expenses, be kept in identifiable bank accounts in the state in which the attorney's office is located and that no funds belonging to the attorney shall be deposited therein except for funds sufficient to pay bank charges and funds belonging in part to the client and in part to the attorney.

Hearing committee [ ] held hearings on January 17, 1984 and on April 10, 1984. At the April 10 hearing, respondent's attorney requested a continuance of the hearing on mitigation, which was denied by the hearing committee. Counsel for respondent ar-

gued that "we are not offering testimony on the guilt-innocence issue," but that respondent's return to active addiction required hospitalization. He further argued that respondent could not "put his best foot forward because he is still pretty sick."

A hearing on disposition was scheduled for April 18, 1984, but the parties decided to introduce the evidence on disposition by letter in accordance with Disciplinary Rule 89.151, dealing with evidence on type of discipline. A brief was submitted by the Office of Disciplinary Counsel on June 13, 1984. No brief was submitted by respondent.

The hearing committee concluded that respondent had violated D.R. 1-102(A)(4), D.R. 1-102(A)(6), and D.R. 9-102(A). No exceptions to the report of the hearing committee were filed by either respondent or petitioner. The hearing committee recommended that respondent be disbarred from the practice of law, and the Disciplinary Board concurs.

## II. FINDINGS OF FACT

On or about January 4, 1979, [B] sustained personal injuries as a result of an automobile accident. Respondent represented [B] in collecting the appropriate insurance benefits arising as a result of the injuries [B] sustained in the accident. Between January 4, 1979 and January 8, 1979, respondent contacted [C], and requested that he evaluate and treat [B]. [C] agreed on the condition that respondent execute a letter guaranteeing payment of [B]'s medical bills. By letter dated January 8, 1979, respondent advised [C] that [B]'s medical bills would be covered by the [A] Insurance Company, but that in the event of delay, respondent would assure prompt payment. Medical services were subsequently provided to [B]

by [C] from January 8, 1979 to September 6, 1979. The terms of the [A] insurance policy made [A]'s insurance coverage obligations secondary to Medicare. After Medicare paid $1,100.60, the amount due [C] was $1,625.92. As a result, [A] issued three drafts in payment of No-fault medical expenses as follows:

| Draft | Date | Amount | Payees(s) |
|-------|------|--------|-----------|
| 976588 | 08/09/79 | $479.31 | "[B]" |
| 134782 | 03/21/80 | 149.64 | "[B]" |
| 147458 | 05/21/80 | 996.97 | "[B]" and "[C]" |

All three drafts were forwarded by [A] to respondent. Respondent did not notify [C] that these drafts had been received, nor did he forward any of the proceeds of these drafts to [C].

Draft no. 976588 in the amount of $479.31, payable to [B], was cashed at [D] Bank out of [A]'s account as a result of [B]'s endorsement. Draft no. 134782 in the amount of $149.64, also payable to [B], was endorsed by [B] and by respondent, and was deposited on March 25, 1980 into a checking account held jointly by respondent and his wife. This was respondent's only bank account. Subsequent to this deposit, respondent or his wife withdrew from and deposited monies into the account, such that the balance in the account fell to a zero balance on April 16, 1980. Draft no. 147458 in the amount of $996.97, payable to [B] and [C], was endorsed by [B] and also bore the purported endorsement of "[C]". Neither [B] nor [C] endorsed [C]'s signature. On May 28, 1980 respondent deposited this draft into his account. Subsequent to this deposit, the balance of respondent's account fell below the amount required to make payment to [C].

Having not received payment, [C] filed suit against respondent, [B], [A], and [E] Bank on Janu-

ary 21, 1982. [C]'s attorney wrote to respondent on several occasions in March, but received no reply. Following a notice of default sent to respondent on June 15, 1982, respondent met with the attorney to discuss the possibility of settling this litigation, on June 16, 1982. Respondent acknowledged by note his agreement to repay the money. Respondent, however, took no action on the matter and on or about June 29, 1982, judgment by default was entered against him by the Court of Common Pleas of [ ]. Following the default judgment in civil proceedings, respondent repaid a portion of the funds owed to [C], but did not provide for complete restitution.

The hearing committee report discusses at length the standards required to determine forgery. The committee concluded that petitioner had "sufficiently proven through circumstantial evidence alone, that respondent forged [C]'s signature on Draft no. 147458."

Further, the following stipulations dated January 17, 1984, were made between petitioner and respondent with respect to the issue of the forgery of [C]'s signature on Draft no. 147458 in the amount of $996.97:

"If [B] were called to testify, he would testify with respect to Draft no. 147458 that:

"a. The endorsement in the name of '[B]' is his signature; and

"b. He did not endorse [C]'s name to the draft;

"c. He did not receive any of the monies from the aforsaid (sic) draft; and

"d. The checks drawn on Respondent's account on and after May 28, 1980, the date when Respondent deposited the $996.97 to his account, were not for [B]'s uses and purposes."

And further that:

"If [C] were called to testify with respect to Draft no. 147458, he would testify that:

"a. The endorsement in the name of '[C]' on said draft is not his signature; and

"b. The endorsement of his name was made without his knowledge; and

"c. He did not receive any of the monies from the aforesaid draft; and

"d. The checks drawn on Respondent's account on and after May 28, 1980, the date when Respondent deposited the $996.97 to his account, were not for [C]'s uses and purposes."

## III. DISCUSSION

Commingling and conversion of a client's funds is a serious breach of trust by an attorney. Although the funds were payable to [C], who was not respondent's client, they were nevertheless funds due by respondent's client to his physician. Two of the three checks issued by [A] Insurance Company were made payable to [B], and the third check was made payable to [B] and [C]. Each check was endorsed by the client, but respondent never forwarded any of the money to [C]. Rather, respondent cashed the first check, and deposited the proceeds of the second and third checks to his personal checking account. Following deposit of each of these checks, his account fell below the amount required to reimburse [C]. Respondent made no attempt to reimburse [C] until a judgment by default was entered against him by the court of common pleas, despite attempts by [C]'s attorney to settle the matter peaceably. Although respondent paid a portion of the funds due to [C], he did not provide complete restitution.

It is clear in the record of this case that [C] did not endorse his name to the check issued to [B] and himself. It is also clear that [B] did not sign [C]'s name to the check. In stipulations agreed to by petitioner and respondent, both parties agreed that the endorsement of [C]'s signature was made by someone other than [C] or [B].

The Disciplinary Board accept the findings of the hearing committee that Disciplinary Counsel proved by circumstatial evidence that respondent forged [C]'s signature on Draft no. 147458.

The conclusions reached by the hearing committee that respondent committed the forgery, in addition to commingling and converting client funds owed to the client's physician, are supported by the Disciplinary Board. The hearing committee has argued persuasively for disbarment.

Clearly, respondent willfully misappropriated entrusted funds and used them for his own purposes. He did not hold these funds in an escrow account, but cashed one check and deposited the proceeds of two other checks into his personal checking account. Respondent used the proceeds for his own purposes, and the balance in his account dropped below the amount required to reimburse [C].

An attorney who deliberately misuses funds entrusted to him, and who commits an act of forgery, should not be allowed to practice law until such time as he can prove in reinstatement proceedings that he has met the requirements necessary to return to the practice of law, and is no longer a threat to the standing of the bar or to the public interest.

The hearing committee did not believe there were any mitigating circumstances which would lead to the conclusion that respondent would not continue to endanger the public, should he remain in the practice of law. Respondent made partial restitution

to [C] only after a default judgment was entered against him in civil proceedings.

Respondent was convicted of two counts of theft by failure to make required disposition and was sentenced to two concurrent three year terms of probation. As a result of his conviction, he was suspended by your honorable court on July 13, 1984.

## IV. RECOMMENDATION

At its meeting on October 24, 1984, the Disciplinary Board found that respondent had violated D.R. 1-102(A)(4), D.R. 1-102(A)(6), and D.R. 9-102(A). The board adopted the findings and recommendation of the hearing committee and unanimously agreed that [Respondent] be disbarred. It is further recommended that the court direct that all necessary expenses incurred by this board in the investigation and processing of the petition for discipline be borne by and paid for by said respondent. (A statement of such expenses is appended to this report).

Mr. Douglas did not participate in the adjudication.

## ORDER

NIX, *C.J.*, and now, this September 23, 1985, the order entered by this court in the above matter on December 21, 1984, is vacated, the recommendation of the Disciplinary Board dated November 19, 1984, is accepted, and it is ordered that [Respondent] be and he is disbarred from the Bar of this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.